IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:17-CV-00275-FL

| | |
|---|---|
| EASTPOINTE HUMAN SERVICES, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>NORTH CAROLINA DEPARTMENT OF )<br>HEALTH AND HUMAN SERVICES, )<br>NASH COUNTY, TRILLIUM HEALTH )<br>RESOURCES, MANDY K. COHEN, in her )<br>official capacity as Secretary of the North )<br>Carolina Department of Health and Human )<br>Services, and RICHARD O. BRAJER, in )<br>his individual and former official capacity )<br>as Secretary of the North Carolina )<br>Department of Health and Human Services, )<br>)<br>Defendants. ) | ORDER |

This matter is before the court on defendants' separate motions to dismiss for lack of jurisdiction. (DE 26 , 30, and 31 ). Also pending before the court is plaintiff's motion for temporary restraining order ("TRO"). (DE 6). In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendants' motions to dismiss are granted and plaintiff's motion for TRO is denied as moot.

**BACKGROUND**

Plaintiff initiated this action on June 8, 2017, against defendants Trillium Health Resources ("Trillium"), Nash County, North Carolina Department of Health and Human Services

("NCDHHS"), Mandy K. Cohen, in her official capacity as Secretary of the NCDHHS, and Richard O. Brajer, in his individual and former official capacity as Secretary of the NCDHHS, alleging both North Carolina state and federal claims, all arising from defendants' involvement in the proposed disengagement of Nash County from plaintiff's catchment area. Plaintiff asserts state law claims against defendants for civil conspiracy and violation of the North Carolina Constitution. Plaintiff also asserts state law claims against defendant Nash County for breach of contract and breach of implied covenant of good faith and fair dealings and claims against defendants Brajer and Trillium for tortious interference with contract. In addition, plaintiff asserts claims against defendants for violation of 42 C.F.R. § 438.62, violation of Article I, Section 10 (the "Contracts Clause"), and violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution.[1] Plaintiff seeks declaratory judgment and monetary damages. At the time of filing of complaint, plaintiff also filed the instant *ex parte* motion for temporary restraining order, seeking to enjoin defendants (save defendant Brajer), from proceeding with Nash County's disengagement.

On June 9, 2017, defendants NCDHHS and Cohen responded preliminarily in opposition to plaintiff's motion, contending that the court lacks jurisdiction over the matter as required by 28 U.S.C. § 1331. Defendant Trillium responded in a fully formed opposition memorandum to plaintiff's motion on June 12, 2017, contending that plaintiff is not entitled to injunctive relief because it cannot demonstrate success on the merits.

On June 13, 2017, the court held telephonic administrative conference.[2] At conference, the

---

[1] In the alternative to its Contracts Clause and Due Process Clause claims, plaintiff challenges the constitutionality of the North Carolina statute, N.C. Gen. Stat. § 122C-115(a3), as applied.

[2] At time of conference defendant Brajer had not yet been heard from. Counsel for defendants NCDHHS and Cohen later amended notice of appearance and on June 15, 2017, confirmed the scope of representation extends to defendant Brajer both in his individual and former official capacities.

court discussed pending issues, including jurisdictional issues raised by defendants NCDHHS and Cohen, as well as issues surrounding plaintiff's motion for TRO, and set expedited briefing schedule as follows: 1) Defendants' motions to dismiss regarding jurisdictional issues due by June 15, 2017, with plaintiff's response thereto due by June 19, 2017, and any reply due by June 21, 2017; and 2) the North Carolina defendants' response to plaintiff's motion for TRO due June 20, 2017, with any reply by plaintiff due June 23, 2017. In accordance with the court's schedule, defendants filed the instant motions to dismiss, to which plaintiff has responded and defendants replied, concluding briefing on defendants' motions on June 21, 2017. On June 20, 2017, defendants responded in opposition to plaintiff's motion for TRO, which all parties acknowledged at conference should be treated as a motion for preliminary injunction.

In the midst of the court's briefing schedule, on June 20, 2017, defendant NCDHHS allegedly sent plaintiff a contract, which purports to exclude Nash County from its catchment area. Defendant requested by email dated June 20, 2017, sent at 6:02 p.m. by Lynn Fowler, a contract specialist for defendant NCDHHS to Sarah Stroud, on behalf of plaintiff, that the contract be executed and returned no later than June 23, 2017. On June 22, 2017, plaintiff filed an motion for emergency relief, seeking to preserve the status quo pending resolution of plaintiff's request for injunctive relief. By order dated June 26, 2017, the court dismissed plaintiff's motion for emergency relief as moot, reserving ruling on plaintiff's request for fees, pending disposition of the instant action.

## STATEMENT OF FACTS

The facts alleged in the complaint may be summarized as follows. Defendant NCDHHS is the single state agency designated to administer and supervise the administration of the state's

Medicaid program under Title XIX of the Social Security Act. 42 U.S.C. § 1396(a)(5); N.C. Gen. Stat. § 108A-54. Within the NCDHHS, the Division of Medical Assistance ("DMA") is responsible for the day-to-day administration of the Medicaid program. The DMA contracts with area authorities to operate capitated Prepaid Inpatient Health Plans ("PIHPs") for Medicaid enrollees.

Plaintiff is a multi-county Local Management Entity/Managed Care Organization ("LME/MCO"), established pursuant to Chapter 122C of the North Carolina General Statutes. As an LME/MCO, plaintiff is responsible for managing the provision of Medicaid-funded mental health, developmental disability, and substance abuse benefits to residents in the following twelve counties: Bladen, Columbus, Duplin, Edgecombe, Greene, Lenoir, Nash, Robeson, Sampson, Scotland, Wayne and Wilson (together plaintiff's "catchment area"). Plaintiff operates pursuant to two Medicaid waivers in the Social Security Act,[3] and contracts with the DMA to operate a PIHP for Medicaid enrolles residing within its catchment area. Defendant Trillium is an LME/MCO responsible for managing the provision of Medicaid-funded mental health, developmental disability, and substance abuse benefits to Medicaid enrolles residing within a 24 county catchment area. Like plaintiff, defendant Trillium operates under 1915(b) and 1915(c) waivers.

As relevant here, sometime in 2011, the North Carolina General Assembly enacted House Bill 916, which mandated statewide expansion of certain Medicaid programs. 2011 N.C. Sess. Laws 264. Under the bill, LMEs that did not meet certain requirements by July 1, 2013, would have their management responsibilities reassigned to other LMEs. In order to meet all requirements, the bill allowed LMEs to merge through interlocal agreements.

---

[3] More specifically, plaintiff operates under a 1915(b) waiver and a 1915(c) waiver. The 1915(b) waiver allows plaintiff to mandate enrollment of Medicaid recipients in managed care, and the 1915(c) waiver allows plaintiff to provide home and community based services to individuals with intellectual and developmental disabilities. See 42 C.F.R. § 430.25.

4

In response to the bill, on June 7, 2012, plaintiff entered a Plan of Merger ("Merger Agreement") with Edgecombe-Nash Mental Health, Developmental Disabilities and Substance Abuse Services d/b/a the Beacon Center ("Beacon Center"), Southeastern Regional Mental Health, Developmental Disabilities and Substance Abuse Services ("Southeastern"), and the counties of Bladen, Columbus, Duplin, Edgecombe, Greene, Lenior, Nash, Robeson, Sampson, Scotland, Wayne and Wilson. (DE 1-9). The Merger Agreement, effective July 1, 2012, designated plaintiff as the single surviving LME/MCO for the combined twelve county catchment area.

The Merger Agreement requires all assets, fund balances, current real estate leases, personal property, and equipment leases of the merging entities to be transferred to plaintiff, the surviving entity. At the time of the Merger Agreement, the parties, including Nash County, agreed to use best efforts to "continue the level of funding currently budgeted, and to fund increases where the [Board of County] Commissioners deem appropriate in order to effectively provide mental health, developmental disability, and substance abuse services through [plaintiff]." (DE 1-9 ¶ 14). The Merger Agreement also requires plaintiff to "comply with all statutory and regulatory requirements applicable to multi-county LMEs, including but not limited to . . . the provisions of Chapter 122C of the North Carolina General Statutes, . . . as they exist as of the [m]erger [d]ate or may be amended in the future." (Id. ¶ 17). The Merger Agreement does not provide a termination provision. Each County Chair on the Board of County Commissioners executed the Merger Agreement, thereby binding its respective county to terms therein.

In June 2013, the North Carolina General Assembly appended N.C. Gen. Stat. § 122C-115 to include the following subparagraph:

> (a3)  A county that wishes to disengage from a local management entity/managed care organization and realign with another multicounty area authority

> operating under the 1815(b)/(c) Medicaid Waiver may do so with the approval of the Secretary. The Secretary shall adopt rules to establish a process for county disengagement that shall ensure, at a minium, the following:
>
> (1) Provision of services is not disrupted by the disengagement.
> (2) The disengaging county either is in compliance or plans to merge with an area authority that is in compliance with population requirements provided in G.S. 122C-115(a) of this section.
> (3) The timing of the disengagement is accounted for and does not conflict with setting capitation rates.
> (4) Adequate notice is provided to the affected counties, the Department of Health and Human Services, and the General Assembly.
> (5) Provision for distribution of any real property no longer within the catchment area of the area authority.

N.C. Gen. Stat. § 122C-115(a3).

By memorandum dated October 30, 2015, defendant Brajer, on behalf of the NCDHHS, notified state LME/MCOs that the NCDHHS would "not be acting on requests [to approve LME/MCO mergers, *at [that] time*," in part because the department had not yet promulgated rules for county disengagement. (Exhibit B, DE 1-10) (emphasis in original). On or around November 10, 2015, defendant Nash County gave notice to plaintiff of its intent to disengage and realign with Cardinal Innovations Healthcare ("Cardinal") by February 1, 2016. At this time, NCDHHS had not promulgated rules regarding county disengagement.

On March 17, 2016, defendant Brajer, released a memorandum, which contained a plan for LME/MCO consolidation. (Exhibit C, DE 1-11). The plan proposed merging plaintiff with defendant Trillium. The memorandum also indicated that sometime preceding, in late February, rules regarding county disengagement were "submitted to the Office of the State Budget and Management and the NCDHHS Commission for Mental Health, Developmental Disabilities and Substance Abuse Services." (Id. at 1). In response to the proposed consolidation plan, plaintiff

created a merger task force committee to evaluate consolidation opportunities, including potential opportunities with defendant Trillium. On May 11, 016, the chair of Trillum wrote to defendant Brajer, voicing concerns over the proposed merger of Trillum and plaintiff. (Exhibit D, DE 1-12). Sometime thereafter, merger discussions between plaintiff and Trillium ceased.[4]

The NCDHHS gave formal notice of proposed rules regarding county disengagement on June 15, 2016. (Exhibit J, DE 1-18). The rules were allegedly available for public comment from June 16, 2016, to August 15, 2016, and were scheduled to take effect October 1, 2016.[5]

On or about November 22, 2016, the Board of Commissioners of Nash County adopted a resolution to disengage from plaintiff and realign with defendant Trillium. Approximately one week later, on November 28, 2016, defendant Trillium passed a resolution to accept Nash County's request for realignment and forwarded the same to defendant Brajer. Plaintiff wrote to defendant Brajer on December 1, 2016, objecting to the proposed disengagement on numerous grounds. On December 5, 2016, defendant Brajer, over plaintiff's objection, approved defendant Nash County's request for disengagement, effective April 1, 2017.

In January of 2017, defendant Cohen was appointed by Governor Roy Cooper to succeed defendant Brajer as Secretary of the NCDHHS. Prior to her confirmation, defendant Cohen, purporting to act on behalf of defendant NCDHHS, wrote plaintiff regarding the planned disengagement of Nash County. Defendant Cohen requested that plaintiff submit a "comprehensive

---

[4] According to plaintiff, leaders within the DMA, as well as defendant Brajer, acted to destabilize plaintiff and force plaintiff to merge with defendant Trillium, by, for example, attempting to influence the legislature to pass a bill that would give the Secretary of the NCDHHS authority to force mergers between LME/MCOs. Plaintiff also contends that Denauvo Robinson, Governing Board Chair of Trillium, defamed plaintiff to defendant Brajer, undermining the potential merger between plaintiff and Trillium.

[5] The proposed rules did not become effective until February 1, 2017.

transition plan" to aid the transition of Nash County consumers to Trillium. (DE 1-22). In response to Cohen's letter, plaintiff notified Cohen of alleged unauthorized actions by the NCDHHS, Brajer and Nash County. By letter dated March 16, 2017, Cohen affirmed Brajer's approval of Nash County's disengagement, and postponed the disengagement effective date to July 1, 2017.

At plaintiff's request, plaintiff met with members of defendant NCDHSS on May 4, 2017, to discuss further the rationale for approving Nash County's disengagement. This action followed. Plaintiff contends that the proposed disengagement is in contravention of law and puts it at substantial financial risk.

## DISCUSSION

A.    Standard of Review

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Under Rule 12(b)(1), the plaintiff bears the burden of showing that subject matter jurisdiction is appropriate. See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Adams, 697 F.2d at 1219. Under the former assertion, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009). When the defendant challenges the factual predicate of subject matter

jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The nonmoving party "must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. "If [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556.

In evaluating the complaint, "[the] court accepts all well-plead facts as true and construes these facts in the light most favorable to the plaintiff, but does not consider legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). When a document is attached to a motion to dismiss, "a court may consider it in determining whether to dismiss the [claim] if it was integral to and explicitly relied on in the [pleading] and if the [claimants] do not challenge its

9

authenticity." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). If additional materials "outside the pleading[s] are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment . . . , and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56." Fed. R. Civ. Pro 12(b); see Gay v. Wall, 761 F.2d 175, 178 (4th Cir. 1985).

B.   Analysis

The court first takes up, whether, as defendants contend, it lacks subject matter jurisdiction over plaintiff's claims. "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013) (internal citations omitted). As relevant here, federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A case undoubtedly arises under federal law "when federal law creates the cause of action asserted." Id. (citing American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916)). A case may also arise under federal law "where vindication of a right under state law necessarily turn[s] on some construction of federal law." Merrell Dow Pharm., Inc., v. Thompson, 478 U.S. 804, 808 (1986) (internal quotations omitted). Since subject matter jurisdiction "can never be forfeited or waived," the lack of subject matter jurisdiction can be raised at any time. United States v. Cotton, 535 U.S. 625, 630 (2002); see also Fed. R. Civ. P. 12(h)(3).

The asserted bases for jurisdiction in this court are plaintiff's claims that the enactment of N.C. Gen. Stat. § 122C-115(a3) violates certain federal regulations and provisions of the United States Constitution, thereby invoking this court's federal question jurisdiction. Contrary to plaintiff's suggestion, these claims fail to confer jurisdiction upon the court.

First, plaintiff's claim for violation of 42 C.F.R. § 438.62 does not confer federal question jurisdiction. Allegations of violations of federal statutes do not automatically confer federal question jurisdiction. See Mulcahey v. Columbia Organic Chemicals Co., Inc., 29 F.3d 148, 153 (4th Cir. 1994). A federal statute will only confer federal question jurisdiction where the statute provides a private right of action which the plaintiff is not barred from utilizing. Id. at 152–53.[6] Administrative regulations which implement federal statutes "cannot create . . . enforceable . . . interest[s] not already implicit in the enforcing statute[s]." Smith v. Kirk, 821 F.2d 980, 982 (4th Cir. 1987).

Here, nothing in the plain language of the regulation or the underlying statute evidences Congressional intent to create a private right of action in federal court. Plaintiff contends that 42 C.F.R. § 438.62 implements 42 U.S.C. § 1396a(a)(23) of the Medicaid Act, which allows a private right of action under 42 U.S.C. § 1983. In support of this position, plaintiff cites Planned Parenthood of Gulf Coast, Inc. v. Gee, 837 F.3d 477, 492 (5th Cir. 2016). In Gee, the Fifth Circuit found that § 1396(a)(23) afforded the individual plaintiffs, who were Medicaid beneficiaries, a private right of action under § 1983. 837 F.3d at 489. Unlike the plaintiffs in Gee, plaintiff is not a Medicaid beneficiary. Where the underlying statute "lacks the sort of rights-creating language needed to imply a private right of action [for LME/MCOs]," Armstrong v. Exceptional Child Center, Inc., 135 S. Ct. 1378, 1387 (2015), any claim premised on defendants' violation of 42 C.F.R. § 438.62 cannot give rise to jurisdiction under 28 U.S.C. § 1331. See 42 U.S.C. § 1396a(a)(23) (requiring that state plans for medical assistance which enroll eligible individuals in managed care not restrict the

---

[6]Plaintiff contends that "[w]hether a particular plaintiff has a right of action under a statute is not a jurisdictional question." (DE 34 at 5). However, the Supreme Court and the Fourth Circuit have both dismissed actions for want of federal subject matter jurisdiction where the plaintiffs had no private right of action under the statutory provisions serving the bases for their claims. See e.g., Merrell Dow, 478 U.S. at 816; Mulcahey, 29 F.3d at 154.

enrollee's "choice of the qualified person from whom the individual may receive services under [the relevant section of the title]"). Absent any Congressional directive to the contrary, the court declines to imply a private right of action to enforce 42 C.F.R. § 438.62. Pursuant to Rule 12(b)(1), the court dismisses plaintiff's claim for violation of 42 C.F.R. § 438.62.

Plaintiff's Constitutional claims likewise fail to confer federal question jurisdiction.[7] With regard to plaintiff's Contracts Clause claim, the Fourth Circuit has held that "an attempted § 1983 action alleging state impairment of a private contract will not lie." Crosby v. City of Gastonia, 635 F.3d 634, 641 (4th Cir. 2011). Plaintiff argues that defendants' reliance on Crosby is misplaced, where Crosby does not address the precise issue here– that is, whether "the party alleged to have impaired the contractual right [(the state)] is not a party to the contract." (DE 34 at 15). However, the Fourth Circuit has recognized that "[i]f [a] plaintiff[] retain[s] the right to recover damages for breach of contract, there is no impairment of the contract under the Contracts Clause." Cherry v. Mayor & City Council of Baltimore City, 762 F.3d 366, 371 (4th Cir. 2014) (internal citations omitted). Since N.C. Gen. Stat. § 122C-115(a3) does not "prevent [plaintiff] from obtaining damages, or some equivalent remedy, for [defendant Nash County's alleged] breach," there is no impairment under the Contracts Clause. Id. at 371. (internal citations omitted). Accordingly, dismissal of plaintiff's Contracts Clause claim is appropriate under Rule 12(b)(1). See Crosby, 635 F. 3d at 642–43. This conclusion is bolstered by the fact that the Merger Agreement does not have

---

[7] Plaintiff urges the court to reserve ruling on the sufficiency of its claims and focus instead on "whether [its] claim[s] [are] determined by application of a federal law over which Congress has given the federal courts jurisdiction." (DE 34 at 6). While courts ordinarily look only to the complaint in determining whether jurisdiction is proper, dismissal under Rule 12(b)(1) is appropriate when "jurisdictional allegations are 'clearly . . . immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous." Kerns, 585 F.3d at 192–93 (citing Bell v. Hood, 327 U.S. 678, 682 (1946)).

a fixed duration and explicitly provides that the parties "shall comply with all statutory and regulatory requirements applicable to multi-county LMES, including but not limited to . . . provisions of Chapter 122C of the North Carolina General Statutes, . . . as they exist as the [m]erger [d]ate <u>or may be amended in the</u> future." (DE 1- 9 ¶ 17) (emphasis added).

Lastly, plaintiff's Due Process claim fails to confer federal question jurisdiction upon the court. In its complaint, plaintiff asserts that the North Carolina defendants violated its Due Process rights, where they failed to provide it an "opportunity to comment on the proposed enactment of N.C. [Gen. Stat.] § 122C-115(a3)." (DE 42 ¶ 253). Where plaintiff also alleges that " [o]n June 15, 2016 . . . NCDHHS gave notice regarding proposed rules related to disengagement and realignment of counties from area authorities," (<u>Id.</u> ¶ 90),[8] plaintiff's Due Process claim is "wholly unsubstantial and frivolous." <u>Kerns,</u> 585 F.3d at 193 (citing <u>Bell,</u> 327 U.S. at 682). Accordingly, the court dismisses plaintiff's Due Process claim pursuant to Rule 12(b)(1). <u>See id.</u> ("[A] trial court should dismiss under Rule 12(b)(1) . . . when the jurisdictional allegations are clearly immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous.") (internal quotations omitted).

Finding dismissal of plaintiff's federal claims appropriate for the reasons set forth herein, the court need not address the parties' alternative arguments. In light of the dismissal of plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over plaintiff's remaining state-law claims. 28 U.S.C. § 1367(c)(3); <u>see</u> <u>Carnegie Mellon Univ. v. Cohill,</u> 484 U.S. 343, 350 n.7 (1998); <u>ESAB Grp., Inc., v. Zurich Ins. PLC,</u> 685 F.3d 376, 394 (4th Cir. 2012). Where the court

---

[8]Significantly, attached to its complaint is an email from Denise Baker, a team leader for defendant NCDHHS, to LME/MCO representatives. (<u>See</u> Exhibit J, DE 1-18). The email provides notice of the proposed rules and sets forth the deadlines and process for submitting comments on them. (<u>Id.</u> at 1). Sarah Stroud, plaintiff's CEO, (<u>see</u> DE 1 at 47), is a recipient of the email. (Exhibit J, DE 1-18).

13

lacks subject matter jurisdiction to allow this action to proceed further, the court denies plaintiff's motion for temporary restraining order as moot.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motions to dismiss. (DE 26, 30, and 31). Where the court lacks subject matter jurisdiction over the action, the court DENIES AS MOOT plaintiff's motion for temporary restraining order (DE 6). This matter is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. The clerk is DIRECTED to close this case.

SO ORDERED, this the 29th day of June, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge